Sally A. Odegard, Esq. (011646)  (sodegard@hoklaw.com)
**HOLLOWAY ODEGARD & KELLY, P.C.**
3020 E. Camelback Road, Suite 201
Phoenix, Arizona 85016         (45.041)
Phone:       (602) 240-6670
Facsimile:   (602) 240-6677

Attorneys for Defendants Sergeant Jeffrey Pluta,
  Officer Joel Cottrell, and the City of Phoenix

**IN THE UNITED STATES DISTRICT COURT**

**STATE OF ARIZONA**

| | |
|---|---|
| Shane Brown<br><br>Plaintiff,<br><br>v.<br><br>City of Phoenix; Sergeant Jeffrey Pluta #9132, in his official and individual capacities; Officer Joel Cottrell #9841, in his official and individual capacities,<br><br>Defendants. | Case No: 2-20-CV-02087-DLR-JZB<br><br>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Defendants City of Phoenix, Sgt. Jeffrey Pluta, and Officer Joel Cottrell, by and through counsel undersigned, and pursuant to Rule 56, F.R.C.P., move for summary judgment on all three Counts of Plaintiff's First Amended Complaint ("FAC") [Doc. 9]. As to Count I (excessive force as to all Defendants), the City is not vicariously liable for the conduct of its officers in a § 1983 claim, and in any event, Plaintiff cannot establish that Sgt. Pluta or Officer Cottrell are liable. Plaintiff cannot prove, with respect to Count II (Americans with Disabilities Act ("ADA") claim), either that the City knew or should have known he was disabled or that he was arrested because of legal conduct related to his disability. Finally, as to Count III (violation of the Rehabilitation Act against the City), the claim is untimely, the Rehabilitation Act does not apply to Plaintiff in this context and, in any event, Plaintiff cannot show that any benefit of any City program was denied to him based upon his disability, all as set forth more specifically below.

**ARGUMENT AND AUTHORITIES**

When faced with a Motion for Summary Judgment, the trial judge must ask "not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the Plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).

## I. Factual Background

This case involves the arrest of Plaintiff by representatives of the City of Phoenix Police Department on November 2, 2018, near a Quick Trip gas station and convenience store located at 2725 W. Peoria Avenue in Phoenix. The Police had been called to the scene by the assistant store manager, David Adams, after Plaintiff became verbally abusive and disruptive, and came into the cashier's area of the store. Statement of Facts ("SOF") 1, 2. Plaintiff, who believed that Adams called him a derogatory name, became belligerent and threatening both inside the store and out. SOF 3-7.

Plaintiff, believing that Adams had called the Police, began fleeing the premises westbound on Peoria but, when he saw someone he thought was a security guard or policeman, began running. SOF 8-12. Sgt. Pluta, who was nearby, heard the call about the incident and then saw Plaintiff, who then headed back across Peoria, dropping his backpack so he could run faster. SOF 11-12. Sgt. Pluta also saw an object swinging under Plaintiff's shirt near his waistband, which he thought might be a weapon. SOF 13.

Plaintiff, now back on the north side of Peoria, was intercepted by Officer Cottrell in his Police SUV. Officer Cottrell exited his car, pulled his service weapon and ordered Plaintiff to the ground, and then went to assist Sgt. Pluta, who by then had placed one knee on Plaintiff near the waist area and his other knee on Plaintiff's upper back to pin him down and keep him from rolling over. SOF 14-18.

Because he suspected that he had seen a weapon on Plaintiff, Sgt. Pluta placed one knee on Plaintiff's right waistband area to prevent him from accessing the suspected weapon, and his other knee/shin across Plaintiff's upper back to control him. SOF 19-21. That is precisely what he was taught to do, and was squarely within departmental policy of

using sufficient force to overcome resistance from someone who, like Plaintiff in this case, was believed to have been under the influence of some substance. SOF 22-24. All the while, Plaintiff was attempting to grab and twist Sgt. Pluta's fingers. SOF 20-21.

Plaintiff, who had likely used crystal meth the day of this incident and had probably taken some of his father's hydrocodone in the days before, admitted that he had a letter opener in his fanny pack for a weapon. SOF 25, 26, 27. Although he may have bipolar disorder, there is no evidence that it was affecting him at the time of this incident or that the condition caused either his conduct or his arrest. SOF 28, 29.

The only qualified expert to opine on the matter, Kenneth Wallentine, has confirmed that Plaintiff was down on the ground for only approximately 13 seconds during the incident, and that the technique utilized by Sgt. Pluta (using his knees/shins on Plaintiff's back) is an accepted practice that officers are trained to use. SOF 32, 33. Moreover, Sgt. Pluta and Officer Cottrell had probable cause to arrest Plaintiff and detain Plaintiff with handcuffs. SOF 34.

## II. Plaintiff has not, and cannot, show that Sgt. Pluta and/or Officer Cottrell used "excessive force" to detain him.

Plaintiff asserts a Fourth Amendment claim against all Defendants in Count I of the FAC.

Initially, it must be pointed out that Plaintiff has alleged that the City is "responsible for Defendant Officers' excessive force and false arrest under the theory of *respondent superior* since the acts were undertaken in the scope of their employment." FAC at ¶ 20. He is wrong. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) ("we conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory"). The City is entitled to summary judgment on Count I of Plaintiff's FAC for this reason standing alone, in addition to the reasons set forth below.

Claims of excessive force are analyzed under the objective reasonableness standard of the Fourth Amendment. *Blanford v. Sacramento County*, 406 F.3d 1110, 1115 (9th Cir. 2005). When police officers use reasonable force, their actions do not run afoul of the constitution. *Id.* Courts judge the reasonableness of a particular use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Thus, courts determining reasonableness focus on the facts and circumstances confronting officers at the time of the incident. *Id.* at 397.

As the Supreme Court has explained, analysis of an excessive force claim brought under § 1983 begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. *Id.* at 394. *See also Baker v. McCollan,* 443 U.S. 137, 140 (1979) ("The first inquiry in any § 1983 suit" is "to isolate the precise constitutional violation with which [the defendant] is charged.") "In most instances, that will be either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments, which are the two primary sources of constitutional protection against physically abusive governmental conduct." *Graham*, 490 U.S. at 394.

Once the specific constitutional rights are identified, the validity of the claims must then be judged by reference to the specific constitutional standards which govern those rights, rather than to some generalized "excessive force" standard. *Graham*, 490 U.S. at 394 *citing Tennessee v. Garner, supra,* 471 U.S., at 7–22 (claim of excessive force to effect arrest analyzed under a Fourth Amendment standard); *Whitley v. Albers,* 475 U.S. 312, 318–326 (1986) (claim of excessive force to subdue convicted prisoner analyzed under an Eighth Amendment standard).

In general, a seizure of a person is unreasonable under the Fourth Amendment if a police officer uses excessive force in making a lawful arrest of Plaintiff. A police officer "may use only such force as is 'objectively reasonable' under all of the circumstances." (Ninth Circuit Court of Appeals Model Jury Instruction 9.25 (2017)).

4

The United States Supreme Court's Fourth Amendment jurisprudence "has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396, citing *Terry v. Ohio,* 392 U.S. 1, 22-27 (1968). Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," *Bell v. Wolfish,* 441 U.S. 520 (1979), its proper application "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. 386, 396 (1989), citing *Tennessee v. Garner,* 471 U.S., at 8–9 (the question is "whether the totality of the circumstances justifie[s] a particular sort of . . . seizure").

The "reasonableness" of the force used is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396, citing *Terry v. Ohio,* 392 U.S. 1, 20–22.

> 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' *Johnson v. Glick,* 481 F.2d, at 1033, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Graham*, 490 U.S. at 396–97.

Here, there is insufficient evidence from which a jury could conclude that Sgt. Pluta or Officer Cottrell violated a constitutional right in detaining Plaintiff. They arrived at the scene armed with the knowledge, from their dispatcher, of a report of a commercial burglary in progress. They knew that the suspect was agitated and had threatened bodily harm to the store manager. They knew that the suspect fled the scene. They knew the suspect attempted to evade arriving officers by running through traffic on Peoria Avenue. They knew that the suspect went to the ground only after multiple verbal instructions and

Officer Cottrell pulling his service weapon. They knew the suspect had a potential weapon, which turned out to be a letter opener Plaintiff in fact carried as a weapon. They knew that Plaintiff resisted being detained, moving his arms and hands and attempting to grab and squeeze Sgt. Pluta's fingers. They used the amount of force deemed necessary based upon their observations in order to detain Plaintiff and cuff him for safety. Indeed, the entirety of the time Plaintiff was on the ground while being detained – the time when he claims he was being abused – was only approximately 13 seconds.

In addition, Plaintiff has not and cannot overcome Sgt. Pluta's and Officer Cottrell's qualified immunity. Governmental officials acting in their official capacity are subject to liability only if, in addition to having violated a federal statutory or constitutional right, "the unlawfulness of their conduct was 'clearly established at the time.'" *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018), quoting from *Reichle v. Howards,* 566 U.S. 658, 664 (2012). To be "clearly established," it "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 635 (1987). The standard requires that "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Here, it cannot be said that applying pressure to the hip or back of a prone subject to limit his movement for 13 seconds in order to effectuate cuffing and detention breached a "clearly established" precedent when: 1) Sgt. Pluta and Officer Cottrell had been advised that the subject committed or attempted to commit a commercial burglary, 2) they had been advised that the suspect had threatened bodily harm to the store manager; 3) they knew that the suspect had attempted to flee the scene; 4) they knew that the suspect had attempted to evade apprehension by running through traffic on Peoria Avenue, 5) they knew that the suspect potentially had a deadly weapon, 6) they knew the subject was much bigger than Sgt. Pluta.

Indeed, Chief Wallentine, the only use of force expert who has been disclosed in the case, has concluded that, based upon the circumstances:

1) Sgt. Pluta and Officer Cottrell had reasonable suspicion to detain Plaintiff to investigate whether he violated A.R.S. § 13-1506(A)(1), committing commercial burglary in the third degree;

2) Sgt. Pluta and Officer Cottrell had probable cause to arrest Plaintiff for committing a commercial a burglary;

3) Sgt. Pluta and Officer Cottrell had probable cause to arrest Plaintiff for a violation of A.R.S. § 28-793, crossing a roadway at any point other than within a marked crosswalk;

4) Placing a suspect in cuffs is consistent with generally accepted police training and practices; and

5) The technique of placing a knee in a suspect's back or buttocks is a commonly taught technique for subduing suspects.

In sum, the conduct of Sgt. Pluta and Officer Cottrell was objectively reasonable and in conformity with generally accepted police training and tactics under any viewpoint. It is particularly so when viewed, as it must, "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, *supra*. at 396. Moreover, there is no "clearly established precedent" that the conduct by Sgt. Pluta or Officer Cottrell – conduct that is taught to officers – breached a constitutional right. Accordingly, summary judgment on Count I is appropriate as to all Defendants.

## III. Plaintiff cannot prove the elements of a claim against the City under the ADA.

Plaintiff claims that he is a "vulnerable and disabled" person (FAC at ¶ 12), that he was a qualified individual with the disability of bipolar (FAC ¶ 22), and that he was arrested because of his disability, not because he had committed any crimes (FAC ¶ 24).

The ADA provides that:

> no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. "Discrimination includes a failure to reasonably accommodate a person's disability." *Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), *rev'd in part, cert. dismissed in part sub nom.; City & Cty. of San Francisco,*

*Calif. v. Sheehan*, 575 U.S. 600, 135 S. Ct. 1765, 191 L. Ed. 2d 856 (2015). It can apply to arrests by police officers. *Id.* at 1232. Two arrest situations have been identified as being subject to ADA complaints:

> (1) wrongful arrest, where police wrongly arrest someone with a disability because they misperceive the effects of that disability as criminal activity; and (2) reasonable accommodation, where, although police properly investigate and arrest a person with a disability for a crime unrelated to that disability, they fail to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees.

*Id.*

Even assuming for purposes of this Motion that Plaintiff had a disability on the night of this incident, such a claim requires Plaintiff to allege and prove three elements: (1) he was disabled; (2) the officers knew or should have known he was disabled; and (3) the officers arrested him because of legal conduct related to his disability. *Leibel v. City of Buckeye*, 364 F. Supp. 3d 1027, 1042 (D. Ariz. 2019), *aff'd sub nom.; C.L. by & through Leibel v. Grossman*, 798 F. App'x 1015 (9th Cir. 2020).

Plaintiff's claim fails for several reasons. First, Plaintiff cannot point to any evidence that Sgt. Pluta or Officer Cottrell knew or should have known at the time of Plaintiff's arrest that he suffered from bipolar disorder. Plaintiff admitted that he was not feeling symptoms of his bipolar the evening of this incident. He has no recollection of advising any officers of his condition. Indeed, the belief was that Plaintiff's erratic behavior, based upon the limited interaction Sgt. Pluta and Officer Cottrell had with him at the scene, was probably the result of use of some illegal substance. Plaintiff did indeed admit that he likely used some crystal meth earlier in the day and had probably taken some his father's hydrocodone in the days before.

Moreover, Plaintiff has no evidence that he was arrested because of conduct (commercial burglary) related to his disability. He has not disclosed any expert opinion that his conduct was related to his bipolar condition. Quite the contrary, Plaintiff testified that his conduct was the result of the store manager disparaging him with a perceived

homophobic slur, never once attributing the interaction in the store– or his subsequent conduct in trying to evade arrest – to his condition.

Plaintiff has not and cannot meet his burden of proving that any Defendant knew or should have known of his disability, or that he was arrested for conduct related to his disability. Summary judgment is therefore appropriate on Plaintiff's ADA claim.

## IV. Plaintiff has not, and cannot, prove the elements of a claim against the City under the Rehabilitation Act.

Plaintiff asserts a claim under 29 U.S.C. 794. It is found in Title 29 (Labor), Chapter 16 (Vocational Rehabilitation and Other Rehabilitation Services), Subchapter V (Rights and Advocacy). The findings, purpose and policy of the Rehabilitation Act are set out in 29 U.S.C. 701 – "Finding; Purposes; Policy." The findings deal with the disadvantages faced by disabled people in connection with independent living, careers and political, social, cultural and education. The purpose of the Act is to "empower individuals with disabilities to maximize employment, economic self-sufficiency, independence, and inclusion and integration into society. ..." 29 U.S.C. 701(b).

A claim under the Rehabilitation Act requires a showing by Plaintiff that:

> (1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit [of a public program]; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance.

*Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001)

What, then, is the program Plaintiff was otherwise entitled to some benefit from? What benefit was denied solely by reason of his disability? There is none alleged in the FAC, because there simply is no public program from which he was excluded as contemplated by the Rehabilitation Act. *Cf. Pennsylvania Dep't of Corr. v. Yeskey,* 524 U.S. 206 (1998) (prisoner denied admission to "Motivational Boot Camp" program which allowed first offenders to achieve an early release due to his hypertension). Accordingly, the City is entitled to summary judgment on Plaintiff's Rehabilitation Act claim.

In addition, Plaintiff's claim is barred by the applicable statute of limitations. Since the Rehabilitation Act does not have a specific limitations period, claims are generally subject to the most analogous state limitation period. *Ott v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 909 F.3d 655, 659 (4th Cir. 2018). In this circumstance, the most analogous state limitation period is one year for a liability created by statute. A.R.S. § 12-541(5). The incident occurred on November 2, 2018. Plaintiff's original Complaint (Doc. 1) was not filed until almost two years later, on October 29, 2020.

## V. Conclusion

For the reasons set forth above, Defendants respectfully request that the Court enter summary judgment in their favor as to all of Plaintiff's claims.

DATED this 4th day of January, 2022.

**HOLLOWAY ODEGARD & KELLY, P.C.**

By  *s/Sally A. Odegard*
Sally A. Odegard
3020 E. Camelback Road, Suite 201
Phoenix, Arizona 85012
*Attorneys for Defendants City of Phoenix, Sgt. Jeffrey Pluta and Officer Joel Cottrell*

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of January, 2022, I caused the foregoing document to be filed electronically with the Clerk of the Court through the CM/ECF System for filing; and served the following parties of record via the Court's CM/ECF system.

**Elizabeth D. Tate
Elizabeth D. Tate Attorney at Law
2953 N. 48th Street
Phoenix, AZ 85016
attorneyelizabethtate@yahoo.com**
*Attorney for Plaintiff*

*s/Kimberly Sheble*