Elizabeth D. Tate   AZ Bar No.  32659

2953 N. 48th Street

Phoenix, AZ 85018

Telephone (602) 670-4653

E-mail: attorneyelizabethtate@yahoo.com

Fax (602) 595-5959

Attorney for Plaintiff Shane Brown

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| **Shane Brown,** | **Case # 2:20cv02087-DLR-JZB** |
| Plaintiff, | |
| v. | |
| **City of  Phoenix, et. al.,** | **PLAINTIFF'S RESPONSE TO "DEFENDANTS' MOTION FOR SUMMARY JUDGMENT"** |
| Defendants. | (dkt. # 50) |

Plaintiff Shane Brown, by Elizabeth D. Tate, his undersigned attorney of record, responds in opposition to "Defendants' Motion for Summary Judgment" (dkt. #50).  Filed concurrently with this Response, are Plaintiff's Responses to the numbered paragraphs of the Defendants' Statement of Facts in Support of Motion for Summary Judgment ("DSOF").

### 1. <u>Introduction and Overview</u>

Defendants City of Phoenix, Stg. Jeffrey Pluta and Officer Joel Cottrell filed their Motion for Summary Judgment  asking  this Court to grant summary

judgment on all counts in their favor. Defendants claim the following (1) that City is not vicariously liable for the actions of its officers (2) Brown may not prove Stg. Pluta and Officer Cottrell are liable, and that (3) Brown cannot prove his ADA and Rehabilitation Act claims.  To streamline matters, Brown concedes that he may not establish ADA and Rehabilitation Act claims against the City and that summary judgment is appropriate on those Counts. However, Brown may prove his Fourth Amendment excessive force claim against Stg. Pluta, Officer Cottrell and the City. While Defendants claim that Stg. Pluta and Officer Cottrell used a reasonable amount of force to arrest Brown based on information known to him, this position whitewashes the fact that Brown was in handcuffs when Stg.  Pluta brutalized him.

Brown claims (1) he did not step behind the counter (2) he did not attempt to steal beer (3) did not  hurt anyone and (4) did not rob anyone. After seeing a security guard run towards him, Brown fled but dropped to the ground when he heard sirens and saw Officer Cottrell exit his cruiser with a drawn gun.   Stg. Pluta then cuffed Brown from a prone  position and repeatedly jumped up and down on Brown's back to collapse Brown's  lung and break his ribs.  Stg. Pluta ripped Brown up by the chain between the handcuffs to lead Brown to the police car.  Officer Cottrell apologized for Stg. Pluta's behavior and took Brown to the hospital. The City of Phoenix is liable under *Monell* because Lieutenant Hester ratified the officers' acts.

Because Stg. Pluta's acts against Brown were not justified and Officer Cottrell stood by when he could have stopped Stg. Pluta,  this Court should deny summary judgment to  the Defendants on the   Fourth Amendment excessive force claim against them.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## 2. <u>Summary Judgment Standard</u>

In Federal Rules of Civil Procedure Rule 56 summary judgment proceedings, the Court must view the relevant facts presented in the light most favorable to plaintiff, which means the Court must believe Plaintiff's evidence, including his testimony and must draw all justifiable inferences in his favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2502, 2513 (1986) Bodett *v. CoxCom, Inc.* 366 F.3d 736, 742 (9th Cir. 2004).

The Ninth Circuit ruled that in excessive force cases, summary judgment should be granted "sparingly" because the "inquiry nearly always requires a jury to sift through disputed factual contentions and to draw inferences therefrom". *Glenn v. Washington Cnty.,* 673 F.3d 864, 871 (9th Cir. 2011)  When an audio/video recording captures the facts at issue, the Court views those "facts in the light depicted by the videotape". *Scott v. Harris,* 550 U.S. 372, 389-21 (2007). The parties in this case make disputed factual  accounts of  Brown's arrest and there is audio/video of Brown's arrest. Applying these summary judgment standards means that the material facts are disputed and there are genuine issues for trial. Therefore, Defendant's Motion for Summary Judgment  on Brown's Fourth Amendment excessive claim should be denied.

## 3. <u>Plaintiff's Statement of Facts</u>

On November 2, 2018, Brown went to the QuikTrip convenience store located at 2725 W. Peoria Avenue in Phoenix intending to make a purchase. (FAC ¶ 6). Brown wore camouflage cargo shorts, a t-shirt, tennis shoes, a ball cap and a backpack and an army-issued fanny pack. (Ex. E 42:13-19). Brown had cigarettes and a metal letter opener in his fanny pack. (Ex. E

42:21-24) Two times, someone had pulled a gun  and sticks on Brown, so he carried the letter opener for protection. (Ex. E 43:2-6, 22-25)

Brown went into the QuikTrip and became really angry when the store clerk called him ma'am. (Ex. 46:19-25) Brown almost walked behind the counter to confront the clerk but stopped himself. (Ex. E 47:1-7) Brown went out into the parking lot and told the clerk come outside and the clerk would not come outside. (Ex. E 47:1-7) During the exchange with the store clerk, Brown did not slam his hand on the counter and did not  make a big scene, but he did tell the clerk to come outside. (Ex. E 48:15-19). Brown did not have a tug of war with the beer but left the beer on the counter. (Ex. E 50:1-5)

Brown saw the clerk pick up a phone and Brown assumed the clerk called the police. (Ex. E 53:1-10) Brown left the store and started walking westbound in the parking lot. (Ex. E 53:17-25) As Brown walked away,  he saw someone that looked like a security guard. (Ex. E 54:1-8) Brown began to run west. (Ex. E 54:15-17) Brown dropped his backpack because it was extra weight. (Ex. E 55:16-17) Brown made it to the corner when he saw lights and heard sirens. (Ex. E 55:16-24) Officer Cottrell jumped out of his cruiser, had a gun so Brown hit the deck to comply and went prone like Superman in the northeast direction of the sidewalk. (Ex. E 55:23-24) (Ex F 10:13-25) The officer did not even have to tell Brown to get down or other commands. (Ex. E 56:1-11)

Officer Cottrell had his gun out briefly and put it away. (Ex. E 58:5-11) The other guy that Brown assumed was a cop (Stg. Pluta) did not say stop police or anything like that. (Ex. E 58:9-11) He (Stg. Pluta) put the handcuffs on Brown while Brown was on his stomach. (Ex. E 58:12-13) After Stg. Pluta

cuffed Brown, Stg. Pluta started jumping up and down on Brown's back and in between the jumping, he was trying to see what was in Brown's hands, so Brown relaxed his hands. Then Brown had to tightened his hands to protect himself from Stg. Pluta's attempts to break his fingers. (Ex. E 58:12-19) Whenever Brown would relax his hands, Stg. Pluta would try to snap Brown's fingers. (Ex. E 58:12-25)(Ex. H) Stg. Pluta jumped up and down on Brown's back about ten times and kept trying to snap Brown's fingers. Ex. E 58:12-19) Stg. Pluta broke three of Brown's ribs and collapsed a lung. (Ex. E 59:1-5) Every time Brown screamed on the video was when Stg. Pluta was jumping on Brown's back. (Ex. E 68:12-15)

Brown was not able to move while he was on the ground because he was cuffed. (Ex. E 60:10-15)  Before Brown was cuffed, Brown held his  hand out and complied with everything. (Ex. E 60:10-15) Brown believed the beating lasted five minutes but he was going by his memory and had  not viewed the video. (Ex. E 62:7-12) Officer Cottrell believed it took 35 to 45 seconds to get Brown into cuffs. (Ex. F 14:20-25) Officers Cottrell's report states that it took three minutes. (Ex. G)(Ex. D 31:15-19) After the beating, Stg. Pluta ripped Brown up by the chain between the cuffs to get Brown off his stomach. (Ex. E 59:6-12) Brown did not brandish a letter opener. (Ex. D 13: 14-16) It was determined that Brown had a letter opener and a book in his fanny pack when he was searched. (Ex. D 13:11-13) Brown does not claim that Officer Cottrell, the one who got out of the cruiser, was the one who beat him. (Ex. E 62:14-17). Officer Cottrell asked Brown, "You want to go with him or me" then Cottrell  walked Brown to the cruiser. (Ex. E 69:21-23) Brown said that Officer Cottrell apologized to him. (Ex. E 62:17-21) Brown believes he was taken to

1  jail after sitting in the parking lot for a long time. (Ex. E 65:11-16). No one

2  advised Brown of the charges against him at the jail. (Ex. E 65:22-25) St.

3  Joseph's declined to treat Brown but he was treated at Arizona Heart Hospital

4  and released. (Ex. E 73:12-20) (Ex. G)

5  Lieutenant James Hester is currently and investigations lieutenant  who

6  ensures policies are being carried out by the people under his command. (Ex.

7  B 8:12-24) At the time of this Brown's arrest Lt. Hester was a patrol lieutenant.

8  (Ex. B 8:1-9).  The City offered Lt. Hester as a 30(b)(6) witness as the person

9  with policymaking authority for the Phoenix Police  Department who reviewed

10  Officers Cottrell's and Stg. Pluta's police reports, the issue of force report,

11  and the investigation into these officers' actions. Lt. Hester prepared the use

12  of force report. (Ex. B 32:17-17-21) The use of force report lists Lt. Hester as

13  supervisor and states supervisor did not interview involved parties. (Ex. I).  Lt.

14  Hester claimed at his deposition that he does not remember if he sat Stg.

15  Pluta down to ask him what happened. (Ex. B 38:6-19) Lt. Hester had no

16  reason to believe that anything contained in the police reports was not factual

17  (Ex. B 25:4-10).

18  Kenneth Wallentine is the City's expert opined that Brown's arrest was

19  within policy guidelines.  Chief Wallentine could not say that last time he

20  reviewed any Phoenix policies regarding restraining subjects. (Ex. C 10:9-24)

21  Chief Wallentine's report does not have an extensive discussion of prone

22  handcuffing. (Ex. C 37:18-24)

23  ### 4. <u>Argument</u>

24

25  The Supreme Court has stated: "The reasonableness of a particular use

26  of force must be judged from the perspective of a reasonable officer on the

scene, rather than with 20/20 vision of hindsight". *Graham v. Connor,* 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L.Ed. 443 (1989). In *Forrester v. City of San Diego,* 25 F.3d 804 (9ᵗʰ Cir. 1994), the court held that "all claims that law enforcement have used excessive force in the course of an arrest should be analyzed under the Fourth Amendment reasonableness standard." Fourth Amendment jurisprudence has long recognized that the right to make an arrest necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. *McDermott v. City of New York,* 2002 U.S. Dist. LEXIS 2893 (S.D.N.Y. 2002)

### 5. <u>Stg. Pluta acted unreasonably  to violate the Fourth Amendment based on the evidence at the scene.</u>

Courts have applied the "Graham factors" to determine whether force is objectively reasonable.  These include (1) the severity of the crime that prompted  the use of force (2) the threat posed by a suspect to the police or others (3) whether the suspect was resisting arrest. *Byrd v. Phx. Police Dep't,* 885 F.3d 639, 642 (9ᵗʰ Cir. 2018). Whether proper warnings were given before using force is also relevant. *Hughes v. Kisela,* 841 F.3d 1081, 1085 (9ᵗʰ Cir. 2016).

First, Brown contests that he attempted commercial burglary.  Brown went into the QuikTrip and became really angry when the store clerk called him ma'am. (Ex. 46:19-25)  Brown almost walked behind the counter to confront the clerk but stopped himself. (Ex. E 47:1-7) Brown did not have a tug of war with the beer but left the beer on the counter. (Ex. E 50:1-5) A reasonable jury could determine that there was no reason to believe that Brown attempted commercial burglary or to shoplift beer. Importantly, no one

advised Brown of the charges against him at the jail. Brown was no longer under arrest at the hospital. (Ex. G)  (Ex. E 65:22-25) But even if Brown was suspected of commercial burglary, no crime was at issue when Brown hit the deck to comply and went prone like Superman in the northeast direction of the sidewalk. (Ex. E 55:23-24) (Ex F 10:13-25) Stg. Pluta did not take Brown down. (Ex. D 12:17-18) Brown was already on the ground when Stg. Pluta reached him. (Ex. D 12:20-21) There the severity of the crime factor lies in Brown's favor. Stg. Pluta should have used little or no force against Brown.

The next factor, the threat Brown posed to Stg. Pluta, and Officer Cottrell and the public  was minimal and lies in Brown's favor.  When Officer Cottrell jumped out of his cruiser, had a gun so Brown hit the deck to comply and went prone like Superman in the northeast direction of the sidewalk. (Ex. E 55:23-24) (Ex F 10:13-25) The officer did not even have to tell Brown to get down or other commands. (Ex. E 56:1-11) Brown did not brandish a letter opener. (Ex. D 13: 14-16) It was determined that Brown had a letter open and a book in his fanny pack *afterwards* when he was searched not while he was being cuffed.  (Ex. D 13:11-13) The Defendants wrongly claim that the letter opener posed a threat to them.  Before Brown was cuffed, Brown held his hand out and complied with everything. (Ex. E 60:10-15) An officer's claim that he fears for his or the safety of others may not support a claim that a suspect  posed  a  threat.    There  must  be  objective  factors. *Deorle v. Rutherford,* 272 F.3d 1272, 2181(9th Cir. 2001). With the letter opening being found in the fanny pack there is no objective factor of harm to the officers or others.

The next factor, whether Brown was resisting arrest, is disputed.  In Officer Cottrell's police report, Office Cottrell claims that Brown resisted. (Ex. G). In the audio/video of the arrest, Stg. Pluta can be heard saying "stop kicking".(Ex. H) But Brown's recounting of the event starkly differs.  Brown says he complied with everything the officers asked of him. Officer Cottrell jumped out of his cruiser, had a gun so Brown hit the deck to comply and went prone like Superman in the northeast direction of the sidewalk. (Ex. E 55:23-24) (Ex F 10:13-25) The officer did not even have to tell Brown to get down or other commands. (Ex. E 56:1-11)  A jury may conclude that Stg. Pluta's command to stop kicking is inconsistent with Brown's claim that he complied. Another consideration is whether Stg.  Pluta and Officer Cottrell gave Brown warnings. The other guy, that Brown assumed was a cop (Stg. Pluta) did not say stop police or anything like that. (Ex. E 58:9-11)

Brown presented this Court with facts that are genuinely disputed that should be appropriately presented to a jury.  The facts derived from Brown's behavior on the scene establish that the circumstances surrounding Stg. Pluta's, and Officer Cottrell's use of force  violated the Fourth Amendment.

### 6. **Although Officer Cottrell did not  personally deliver the blows to Brown, he is equally  liable for excessive force under the Fourth Amendment.**

In *Pelayo v. City of Pomona* 2019 U.S. Dist LEXIS 42289 (S.D.C.A. 2019) a District Court found that an officer that did not directly use force against a suspect had a duty to intercede and was equally liable under the Fourth Amendment.  In  *Cunningham v. Gates* 229 F3d 1271 (9th Cir. 2000) the Ninth Circuit held that a bystander officer is liable if he had an opportunity to intercede.

Officer Cottrell authored a police report where he admits to helping to handcuff Brown. (Ex. G) Officer Cottrell asked Brown, "You want to go with him or me" then Cottrell walked Brown to the cruiser. (Ex. E 69:21-23) Brown said that Officer Cottrell apologized to him. (Ex. E 62:17-21)  Cottrell had an opportunity to intercede by objecting to Pluta's brutalization of Brown. Instead, he wrote an account of the arrest in a police report that a jury must determine if  false. (Ex. G) These actions make Officer Cottrell equally as liable as Stg. Pluta  for assaulting Brown while handcuffed even though Officer Cottrell  never personally delivered a blow.  The Court should not grant summary judgment   for Officer Cottrell on Brown's excessive force claim against Officer Cottrell.

**7.  <u>Both Stg. Pluta and Officer Cottrell are not entitled to qualified immunity.</u>**

A court may strip  an officer of qualified immunity if the law was "sufficiently clear that a reasonable official would understand that what he was doing violated a constitutional right. *Hope v. Pelzer,* 536 U.S. 730, 739 (2002). The "reasonableness standard is not a demanding standard" *A.D. v. Cal. Highway Patrol,* 712 F.3d 446 (9th Cir. 2013).

In *Blankenhorn v. City of Orange,* 485 F.3d 463 (2007), after holding that there was a triable issue as to whether the defendant officers used excessive force by "gang tackling" and punching the plaintiff, the Ninth Circuit declined to extend qualified immunity to the officers. 485 F.3d at 480-31. The court reasoned that in determining whether the rights at issue were clearly established at the time of the incident, Graham's holding, that force

is only justified when there is a need for force, was sufficient to establish a clearly established right.

Many Ninth Circuit decisions address officers who punched suspects who posed little or no threat and were not resisting when force was used. While Stg. Pluta did not punch Brown, Stg. Pluta started jumping up and down on Brown's back and in between the jumping, tried to break Brown's fingers. (Ex. E 58:12-19) (Ex. E 58:12-25)(Ex. H). In *Drummond v. City of Anaheim,* 343 F.3d at 1059 (9th Cir. 2003), the court found that the 'officers use of severe force was constitutionally excessive' in the light of the fact that the  plaintiff was "handcuffed and lying on the ground" and that the officers were not entitled to qualified immunity. Like Drummond,  Brown was handcuffed and lying on the ground when Stg. Pluta assaulted him. Because of this, Stg. Pluta is not entitled to qualified immunity. Neither is Officer Cottrell because Cottrell stood by and did not protect Brown from Stg. Pluta.

### 8.  The City of Phoenix ratified Stg. Pluta's and Officer Cottrell's use of force and is therefore  *Monell* liable.

To prove ratification, Brown must present evidence that a City policymaker "made a deliberate choice" to endorse Stg. Pluta's and Officer Cottrell's arrest. *Gillette v. Delmore,* 979 F.2d 1342, 1348 (9th Cir. 1992). *Christie v. Iopa,* 176 F.3d 1231, 1239 (9th Circuit) explains mere approval is not enough to establish liability.  In *Hernandez v. Gates* 100 F.Supp 2d 1209 (C.D. CA 2000) the district court held that a supervisor who oversees the performance of a wrongdoer may be held liable, if the supervisor

conducts himself in a way that establishes deliberate indifference to the Plaintiff's constitutional rights.

Brown directs the Court to the testimony of Lieutenant Hester. The City offered Lt. Hester as its 30(b)(6) witness as the person  with policymaking authority for the Phoenix Police  Department who reviewed Officers Cottrell's and Stg. Pluta's police reports, the issue of force report, and the investigation into these officers' actions.  Lt. Hester authored the use of force report. (Ex. B 32:17-17-21) The use of force report lists Lt. Hester as supervisor and states supervisor did not interview involved parties. (Ex. I).  Lt. Hester claimed at his deposition that he did not remember if he sat Stg. Pluta down to ask him what happened. (Ex. B 38:6-19) Lt. Hester had no reason to believe that anything contained in the police reports was not factual (Ex. B 25:4-10). Lt. Hester wholesale acceptance of the facts accounted for in the police reports, his failure to interview the involved parties is conduct that establishes deliberate indifference to Brown's constitutional rights. This action or inaction on Lt. Hester's  part makes him personally culpable for Stg. Pluta and Officer Cottrell's constitutional violation. This Court should not find that Stg. Pluta and Officer Cottrell as the only liable parties.  The City of Phoenix through its Lieutenant Hester's  lack of investigation and the police department's  and expert's determination   Stg. Pluta and Officer Cottrell operated with departmental guidelines amounted to ratification sufficient to impose *Monell* liability.

## **Conclusion**

Brown  may prove that the Defendants violated the Fourth Amendment against excessive force in his  arrest.  There is testimony and

1  video to establish the violations.  For these reasons, Plaintiff respectfully
2  request the Court to deny  the Defendants' Motion for Summary Judgment
3  as to Brown's excessive force claim against all Defendants.
4          Respectfully submitted this March 7, 2022

5                              s/Elizabeth D. Tate
6                              Elizabeth D. Tate
                          **Certificate of Service**
7          I hereby certify that on  March 7, 2022, I electronically transmitted this
8
9  Response  to  the  Clerk's  Office  using  the  CM/ECF  System  for  filing  and
10 transmittal of a Notice of Electronic Filing.
11

12      By: /s/ Elizabeth D. Tate
13          Elizabeth D. Tate
14