# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shane Brown,<br><br>             Plaintiff,<br><br>v.<br><br>Phoenix, City of, et al.,<br><br>             Defendants. | No. CV 20-02087-PHX-DLR (JZB)<br><br>**ORDER** |

Plaintiff Shane Brown, who is represented by counsel, brought this civil rights case pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA), and the Rehabilitation Act. (Doc. 9.) Defendants move for summary judgment (Doc. 50), and Plaintiff opposes the motion (Doc. 56).

## I. Background

In his First Amended Complaint, Plaintiff sues the City of Phoenix ("the City"), Phoenix Police Department (PPD) Sergeant Jeffrey Pluta, and PPD Officer Joel Cottrell for alleged constitutional violations stemming from Plaintiff's November 2, 2018 arrest. (Doc. 9.) In Count One, Plaintiff alleges a Fourth Amendment excessive force claim against all Defendants; in Count Two, Plaintiff brings an ADA claim against the City; and in Count Three, Plaintiff brings a claim under the Rehabilitation Act against the City. (*Id.* at 7–8.) Defendants now move for summary judgment on all claims. (Doc. 50.)[1]

---

[1] Plaintiff concedes that he cannot establish ADA and Rehabilitation Act claims against the City and that summary judgment is appropriate as to those claims. (Doc. 56 at 2.) Accordingly, the Court will grant summary judgment to Defendants as to Counts Two

**II.    Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

. . .

. . .

---

and Three.

**III. Facts**

On November 2, 2018, David Adams, the assistant store manager of the Quick Trip located at 2725 W. Peoria Avenue in Phoenix, called the police and reported that an individual in the store—later identified as Plaintiff—had become verbally abusive and disruptive and had come into the cashier's area of the store. (Doc. 51 (Defs.' Statement of Facts) ¶¶ 1–2.) Plaintiff became upset when he perceived that Adams was calling him "ma'am" in a derogatory way when Plaintiff came to the counter to purchase beer. (*Id.* ¶ 3; Doc. 55 (Pl.'s Statement of Facts) ¶ 3.) Adams reported to the police that Plaintiff began yelling and slamming his hands on the counter. (Doc. 51 ¶ 4.) Adams reported that he decided he was not going to sell the beer to Plaintiff, but Plaintiff tried to grab it anyway, resulting in a tug-of-war for the beer. (*Id.* ¶ 5.) Adams reported that Plaintiff continued to yell and then walked behind the counter where the registers are located, and Adams told Plaintiff he was going to call the police, after which Plaintiff exited the store but began yelling and banging on the window from the outside. (*Id.* ¶¶ 6–7.) Plaintiff denies slamming his hands on the counter and walking behind the counter and states that he argued with Adams and left the beer on the counter. (Doc. 55 ¶¶ 2, 4, 5.) Plaintiff also asserts that he "jumped up and down and yelled to [Adams] to come outside." (*Id.* ¶ 7.)

Plaintiff thought Adams had called the Police, so he left the store and headed west on Peoria Avenue. (Doc. 51 ¶ 8; Doc. 55 ¶ 8.) Before Plaintiff got out of the parking lot, he saw someone he thought was either a security guard or a police officer, so he took off running. (Doc. 51 ¶ 9.) Defendant Pluta, who was in the area at a nearby Barnes & Noble bookstore, had heard on his radio that a white male subject wearing camouflage shorts had been involved in going behind the counter and stealing something from the QT and was headed westbound. (*Id.* ¶ 11.) Defendant Pluta saw Plaintiff headed westbound towards the south side of a Jiffy Lube at 2745 W. Peoria Avenue. (*Id.* ¶ 12.) As Defendant Pluta walked towards Plaintiff, Plaintiff ran back to the north, dropped a backpack, and then ran across Peoria Avenue. (*Id.*) Defendant Pluta saw an object swinging under Plaintiff's shirt near his waistband, which he thought might be a weapon. (*Id.* ¶ 13.) Plaintiff asserts that

he had a large brass letter opener in his fanny pack for protection because he had been jumped. (Doc. 55 ¶¶ 13, 22.)

As Plaintiff was crossing to the north side of Peoria Avenue, Defendant Pluta was also making his way across Peoria Avenue, and Defendant Cottrell was arriving from the east, where he saw Plaintiff running northbound across Peoria Avenue. (Doc. 51 ¶ 14.) Defendant Cottrell headed for the north side of Peoria Avenue in his patrol vehicle to try to intercept Plaintiff. (*Id.* ¶ 15.) Defendant Cottrell exited his car, pulled his service weapon and, over a pony wall separating the parking lot from the sidewalk, ordered Plaintiff to the ground. (*Id.* ¶ 16.) Plaintiff asserts that he heard sirens and was being chased, and when Defendant Cottrell jumped out of his patrol vehicle, Plaintiff saw a gun and "hit the deck" to comply. (Doc. 55 ¶ 16.)

Defendant Cottrell waited until Defendant Pluta got across Peoria Avenue near Plaintiff, then holstered his gun and climbed over the wall to assist Defendant Pluta in taking Plaintiff into custody. (Doc. 51 ¶ 17.) Defendant Cottrell saw Defendant Pluta place a knee on Plaintiff's waist area, then put his other knee on Plaintiff's upper back to pin him down and keep him from rolling over. (*Id.* ¶ 18.) Defendant Cottrell asserts that Plaintiff was "still squirming," so Defendant Cottrell used a technique to control a prone suspect by crossing Plaintiff's legs and pulling his feet up toward his buttocks. (*Id.* ¶ 19.) Defendants assert that Plaintiff was attempting to "grab and twist" Defendant Pluta's fingers as Defendant Pluta attempted to handcuff Plaintiff; Plaintiff admits that he was tightening his hands while he was being handcuffed. (*Id.* ¶¶ 20–21.) Plaintiff asserts that he complied with the officers' orders, and Defendant Pluta was "trying to break [Plaintiff's] fingers." (Doc. 55 ¶ 20.) Plaintiff asserts that after Defendant Pluta handcuffed him, Defendant Pluta "repeatedly jumped on [Plaintiff's] back" and then "ripped [Plaintiff] up by the chain between the cuffs." (*Id.* ¶ 22.)

Plaintiff submitted as evidence body cam footage from his arrest which shows an unnamed PPD officer arriving at the scene of the arrest. (Pl.'s Ex. H, USB Drive at 3:40–5:00.) Plaintiff can be seen laying on the ground in a prone position with officers on either

side of him pinning him to the ground. (*Id.*) Once Plaintiff is handcuffed, the officers pull Plaintiff up to his feet and escort him to a patrol vehicle where he is subsequently searched. (*Id.*) The video does not show Plaintiff being beaten or any of the officers jumping on his back. (*See id.*)

## IV. Excessive Force Claim

### A. Legal Standard

The use of excessive force by police officers in the course of an arrest can violate the arrestee's Fourth Amendment right to be free from unreasonable seizures. *See White by White v. Pierce County*, 797 F.2d 812, 816 (9th Cir. 1986). The Fourth Amendment does not prohibit the use of reasonable force. *Tatum v. City & County of S.F.*, 441 F.3d 1090, 1095 (9th Cir. 2006). Whether the force was excessive depends on "whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989); *Tatum*, 441 F.3d at 1095; *Lolli v. County of Orange*, 351 F.3d 410, 415 (9th Cir. 2003). The Court must balance the nature and quality of the intrusion against the countervailing governmental interests at stake. *Graham*, 490 U.S. at 396; *Lolli*, 351 F.3d at 415. Moreover,

> [t]he "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . . "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment.

*Graham*, 490 U.S. at 396 (citations omitted). "Whether a particular use of force was 'objectively reasonable' depends on several factors, including the severity of the crime that prompted the use of force, the threat posed by a suspect to the police or to others, and whether the suspect was resisting arrest." *Tatum*, 441 F.3d at 1095.

### B. Nature and Quality of Intrusion

First, the Court evaluates "the type and amount of force inflicted." *Espinosa v. City & Cnty. of S.F.*, 598 F.3d 528, 537 (9th Cir. 2010) (quotation omitted). The evidence shows

1 that Defendant Pluta placed his knees on Plaintiff's waist and upper back. Plaintiff asserts that Defendant Pluta jumped on his back and tried to break his fingers, but these statements are not supported by the body cam footage that Plaintiff submitted as evidence. *See Scott v. Harris*, 550 U.S. 372, 380–81 (2007) (a court may properly consider video evidence in ruling on a motion for summary judgment and should view the facts " in the light depicted by the videotape"). Defendant Pluta's use of his knees to briefly pin Plaintiff to the ground was a minimal use of force and must be justified by a similar level of "government interest [that] compels the employment of such force." *See Deorle v. Rutherford*, 272 F.3d 1272, 1280 (9th Cir. 2001).

### C. Government Interests

The Court applies the *Graham* factors to evaluate the importance of the government interest at stake during Plaintiff's arrest. The first factor examines the severity of the crime at issue. *Espinosa*, 598 F.3d at 537. More serious crimes may require greater levels of force to apprehend the subject. *See Law v. City of Post Falls*, 772 F. Supp. 2d 1283, 1297 (D. Idaho 2011). Generally, this factor weighs in favor of the officers if they have "reason to believe" the suspect had committed a "felony-grade offense." *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012). The record shows that Defendants were responding to a report of a commercial burglary—a crime that constitutes a Class 4 felony under state law . Ariz. Rev. Stat. § 13-1506(A). Accordingly, this factor weighs in favor of Defendants.

The "most important *Graham* factor" is whether Plaintiff "posed an immediate threat to the safety of the officers or others." *See Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011). An officer's statement that he fears for his safety or the safety of others is not sufficient; "there must be objective factors to justify such a concern." *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (citation and quotation omitted). "If the person is armed—or reasonably suspected of being armed—a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat." *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013).

1    As to whether Plaintiff posed a threat, there is no dispute that Plaintiff initially fled from the police on foot, but it appears that Plaintiff was compliant once the officers caught up with him and ordered him to get on the ground.  It is undisputed that Defendant Pluta observed an object hanging from Plaintiff's waistband that he believed might be a weapon, and that this item turned out to be a fanny pack containing a large brass letter opener.  It is also undisputed that Plaintiff tightened his hands while the officers attempted to handcuff him.  This reaction could reasonably be construed as resistance.  In light of the information that Plaintiff potentially had a weapon and had just threatened someone, such movements created an immediate threat.  Accordingly, this factor also weighs in Defendants' favor.

### D.     Necessity of Force

Finally, the Court must balance the alleged force used against the need for such force to determine whether the force used was "greater than reasonable under the circumstances." *Espinosa v. City and Cnty. of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010) (quoting *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir. 2002)).  This determination is judged from the perspective of a reasonable officer on the scene.  *Graham*, 490 U.S. at 396-97.  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  *Graham*, 490 U.S. at 396-97.  Summary judgment is appropriate if, after resolving all factual disputes in the plaintiff's favor, the Court concludes that the officers' use of force was objectively reasonable.  *See Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994).

As mentioned, whether the force used was reasonable is judged from the perspective of a reasonable officer on the scene.  *Graham*, 490 U.S. at 396–97.  From this perspective, Defendants had cause to believe that Plaintiff had just threatened someone, attempted to flee, potentially had a weapon and posed an immediate threat, and that he was resisting arrest.  These circumstances warranted at least a minimal amount of force to effect the

arrest, and the Court finds that Defendants' use of force in this instance was objectively reasonable.

Accordingly, the Court will grant summary judgment to Defendants Pluta and Cottrell, and their qualified immunity argument need not be addressed. *See Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994) (summary judgment is appropriate if, after resolving all factual disputes in the plaintiff's favor, the Court concludes that the officers' use of force was objectively reasonable).

To the extent Plaintiff brings an excessive force claim against the City in Count One, that claim also fails. To maintain a claim against a municipality, a plaintiff must meet the test articulated in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-94 (1978). Accordingly, a municipality can only be held liable under § 1983 for its employees' civil rights deprivations if the plaintiff can show that an official policy or custom caused the constitutional violation. *Monell*, 436 U.S. at 694. To make this showing, a plaintiff must demonstrate that (1) he was deprived of a constitutional right; (2) the municipality had a policy or custom; (3) the policy or custom amounted to deliberate indifference to Plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110−11 (9th Cir. 2001). Because the Court has determined that there was no constitutional violation, Plaintiff's claim against the City fails on the first *Monell* element. Accordingly, summary judgment will be granted to the City as to Count One.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment (Doc. 50).

. . . .

. . . .

. . . .

. . . .

(2) Defendants' Motion for Summary Judgment (Doc. 50) is **granted**, and the action is terminated with prejudice. The Clerk of Court must enter judgment accordingly.

Dated this 6th day of September, 2022.

Douglas L. Rayes
United States District Judge